**TECON ENGINEERS, INC., a corporation and related cases**

v.

**The UNITED STATES.**

Nos. 354–62, 26–64, 355–62, 115–63, 356–62, 114–63.

United States Court of Claims.

April 16, 1965.

James E. Fahey, Louisville, Ky., and Clarence T. Kipps, Jr., Washington, D. C., for plaintiffs.

S. Laurence Shaiman, Washington, D. C., with whom was Acting Asst. Atty. Gen. John B. Jones, Jr., for defendant. C. Moxley Featherston and Philip R. Miller, Washington, D. C., were on the brief.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DURFEE, Judge.

This opinion follows prior disposition of the case when, on February 10, 1965, the court, by order, denied plaintiffs' motion to dismiss their petitions for lack of jurisdiction, and further directed an opinion to follow. In disposing of plaintiffs' motion, the court found as follows:

(1) on May 21, 1963, the five actions were, by agreement of the parties, consolidated for trial and, thereafter, both plaintiffs and defendant filed various motions for the production and inspection of documents, for taking discovery depositions, and for other purposes, and both participated in discovery proceedings and in several pretrial conferences;

(2) on May 18, 1964, after the trial commissioner had postponed several previous settings for trial, he entered an order setting these cases for trial in Louisville, Kentucky, beginning February 1, 1965;

(3) on January 14, 1965 the trial commissioner denied plaintiffs' request for a postponement of the trial for 60 days after February 1, 1965, and on review this order was affirmed January 26, 1965;

(4) on January 26, 1965, plaintiffs filed in the United States District Court for the Eastern District of Kentucky complaints upon the same claims which are included in the petitions in this court, and on the same date plaintiffs filed their motion to dismiss their petitions, asserting

that under 28 U.S.C. § 1500, this court lacks jurisdiction;

(5) before they filed the complaints in the District Court, plaintiffs had elected to institute and prosecute these actions in this court, and until January 26, 1965, when plaintiffs filed their motion to dismiss, the claims upon which plaintiffs' petitions are based were not pending in any other court.

The court further found that:

(1) on January 27, 1965, plaintiffs notified the trial commissioner that they had elected to stand on their motion to dismiss for lack of jurisdiction and would not go to trial;

(2) in their request for oral argument on their motion to dismiss, as well as during the argument in open court, plaintiffs stated that they had notified the trial commissioner that they would not go to trial if their motion to dismiss was denied and further stated that "If the court denies the plaintiffs' motion, the case will be dismissed with prejudice for failure of the plaintiffs to proceed to trial or further prosecute their cases in this court. The plaintiffs are so certain that the court no longer has jurisdiction in these cases, and that this position will ultimately be upheld, that they accept the risk of the alternative result of a dismissal of their claims with prejudice"; and

(3) plaintiffs' statements constitute a refusal to further prosecute these actions.[1]

The question presented is whether plaintiffs by this motion may oust this

---

[1] Plaintiffs first invoked the jurisdiction of this court with the filing of a petition on December 14, 1962, for the recovery of Federal income taxes and civil fraud penalties alleged to have been erroneously collected from plaintiffs. On May 20, 1963, following a motion by plaintiffs to take depositions, plaintiffs agreed to consolidate these six actions for trial. Thereafter, plaintiffs have, by over 30 separate procedural steps, including stipulations of fact, motions for discovery, participation in pretrial conferences, taking of depositions, motions for reconsideration of the trial commissioner's orders, motions for extension of time on procedure, objections to defendant's motions and other actions extending for a period of over two years, re-asserted their recognition of the jurisdiction of this court. While we do not consider or rely upon this protracted and persistent participation in trial procedure before this court by plaintiffs as determinative of the legal question before us, it is illustrative of the procedural problems and delay that can result.

court of its conceded jurisdiction under the Tucker Act over these pending suits by later filing new suits for the same claims in a Federal district court, and then moving to dismiss these same cases here, for lack of jurisdiction.

The jurisdictional statutes directly involved are:

28 U.S.C. (1958 ed.):

Sec. 1346 [as amended by Sec. 80 of the Act of May 24, 1949, c. 139, 63 Stat. 101, and Sec. 1 of the Act of July 30, 1954, c. 648, 68 Stat. 589].
*"United States as defendant.*

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

"(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

\*   \*   \*   \*   \*   \*

"§ 1500.  *Pendency of claims in other courts.*

"The Court of Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States."

The reasons why plaintiffs invoke Sec. 1500 are irrelevant for the purpose of deciding their motion. They have clearly stated in their petition to dismiss and in oral argument, that if their motion to dismiss their petitions for lack of jurisdiction is denied, they would not go to trial or further prosecute their claims in this court, and would accept the risk of the alternative result of a dismissal of their claims with prejudice.

The jurisdiction of this court over suits for refund of Federal taxes is established by Section 1 of the Tucker Act of March 3, 1887 (c. 359), 24 Stat. 505, now 28 U.S.C. § 1491 (1958 ed.).

Original and concurrent jurisdiction was given to the District Courts by amendment to the Tucker Act, as stated by the Supreme Court in Glidden Co. v. Zdanok, 370 U.S. 530, 565, 82 S.Ct. 1459, 1480, 8 L.Ed.2d 671 (1962), in these words:

"In truth the District Courts have long been vested with substantial portions of the identical jurisdiction exercised by the Court of Claims. The Tucker Act, § 2, 24 Stat. 505 (1887), as amended, 28 U.S.C. § 1346 (a) (2), gives them concurrent jurisdiction over the suits it authorizes, when the amount in controversy is less than $10,000. Under that Act a District Court sits 'as a court of claims,' United States v. Sherwood, 312 U.S. 584, 591 [61 S.Ct. 767, 85 L.Ed. 1058], and affords the same rights and privileges to suitors against the United States. Bates Manufacturing Co. v. United States, 303 U.S. 567, 571 [58 S.Ct. 694, 82 L.Ed. 1020]. \*   \*   \*"

In Bates Mfg. Co. v. United States, 303 U.S. 567, 571, 58 S.Ct. 694, 696, 82 L. Ed. 1020 (1938), a tax refund suit in District Court, the Supreme Court pointed out that the Tucker Act gave the District Courts and the Court of Claims *equal status* as to suits for refund of taxes over which concurrent jurisdiction was given, and that under the Tucker Act Congress created:

" \*   \*   \*  an integrated jurisdictional plan by which the Court of Claims and District Courts could afford equal opportunities for expeditious and fair trials of like claims within the jurisdictional amount of the District Courts. \*   \*   \*  Uniformity and equality in substantial rights

and privileges—for claimants in both forums—were essential features in the system. * * * As to substantial rights, Congress evidently meant to give claimants an identical status in both Courts where the amount in controversy was included in the jurisdiction of both. * * * "

■ Accordingly, the law is clearly established that the District Courts and the Court of Claims have concurrent jurisdiction over suits for refund of taxes under the Tucker Act, and that in the exercise of this concurrent jurisdiction, the District Courts and the Court of Claims have *equal status*.

Plaintiffs concede that they must elect between suit in the Court of Claims and suit in another court of concurrent jurisdiction. However, they contend that under Section 1500, this court has no present jurisdiction because they have *later* elected to bring suit in another court; further, that the statute does *not* provide, as the Government now asserts, that the Court of Claims can keep jurisdiction if suit was filed in the Court of Claims first. This contention is not valid for several reasons.

First, there is no requirement for express provision in the statute that this court can keep jurisdiction if suit was filed here first.[2]

■ The long established rule of comity in such cases is that the court having equal and concurrent jurisdiction over the subject matter which first obtains and exercises this jurisdiction, retains jurisdiction until a final judgment is entered. Covell v. Heyman, 111 U.S. 176, 182, 4 S.Ct. 355, 28 L.Ed. 390 (1884); Ponzi v. Fessenden et al., 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922); Smith v. McIver, 9 Wheat. (22 U.S.) 532, 6 L.Ed. 152 (1824); Speed Products Co. v. Tinnerman Products, 83 U.S.App.D.C. 243, 171 F.2d 727 (1948); Triangle Conduit & Cable Co. v. National Electric Products Corp., 125 F.2d 1008

(3d Cir. 1942) cert. denied, 316 U.S. 676, 62 S.Ct. 1046, 86 L.Ed. 1750 (1942); Cresta Blanca Wine Co. v. Eastern Wine Corporation, 143 F.2d 1012 (2d Cir. 1944); Ohio Steel Foundry Co. v. United States, 38 F.2d 144, 69 Ct.Cl. 158 (1930).

This clearly recognized rule of comity has not been abrogated or repealed by any language in Section 1500. To interpret the statute in the manner urged by plaintiffs would be to attribute to Congress an intention, not only to deprive this court of its established jurisdiction over pending tax refund cases, but in the process, to interfere with the orderly administration of justice as long recognized and required by the rule of comity.

■ The legislative history of this court and specifically the history of Section 1500 is devoid of even any intimation of such an intent by Congress. Section 1500 in essence provides that the Court of Claims *"shall not have jurisdiction of any claim* for or in respect of which plaintiff or his assignee *has pending in any other court* any suit or process against the United States or any person" who has acted for the United States. We do not construe this language to provide for a disruption of this court's lawful jurisdiction by the mere filing of a petition in the District Court on the same claim that is then actually pending here. The words "shall not have jurisdiction" pertain solely to the acquiring or taking of jurisdiction by this court when the same plaintiff *already* "has pending in any other court" another suit on the same claim. Not only is the legislative history of Section 1500 devoid of any intimation to the contrary; its legal evolution in the Congress supports our conclusion.

From the date of the creation of the Court of Claims by the Act of February 24, 1855, until the Act of March 17, 1866, which gave an appeal to the Supreme Court from judgments of the Court of Claims, the Congress was largely intent upon establishing this court as an inde-

---

2. In these cases over two years before the filing in the District Court.

pendent judicial tribunal with increased powers for the adjudication of claims against the United States, free from revisory authority on the part of the executive and legislative branches of the Government. This grant of judicial power did not, however, operate to deprive claimants of their existing common law rights to sue *officers of the United States* in other courts, and many of these same claimants also took advantage of the opportunity to sue on the same cause of action against *the United States* itself.

In order to prevent this growing conflict of jurisdiction or duplication of legal remedy, Congress adopted the Act of June 25, 1868 (15 Stat. 75). The purpose of Section 8 of the Act was explained to the Senate by the author of the bill, Senator Edmunds, as follows (81 Cong. Globe, 40th Cong. 2nd Sess., at 2769):

"The object of this amendment is to put to their election that large class of persons having cotton claims particularly, who have sued the Secretary of the Treasury and the other agents of the Government in more than a hundred suits that are now pending, scattered over the country here and there, and who are here at the same time endeavoring to prosecute their claims, and have filed them in the Court of Claims, so that after they put the Government to the expense of beating them once in a court of law they can turn around and try the whole question in the Court of Claims. The object is to put that class of persons to their election either to leave the Court of Claims or to leave the other courts. I am sure everybody will agree to that."

The bill, as thus offered by the Senator, was enacted into law *with one important deletion,* as shown by comparing the context of the proposed bill with the Act as actually adopted:

| Original Bill<br>(81 Cong. Globe p. 2769) | (Act of June 25, 1868)<br>(15 Stat. 75) |
| --- | --- |
| "SEC. 8. And it be further enacted, That no person shall file or prosecute any claim or suit in the Court of Claims, or an appeal therefrom, for or in respect to which he or any assignee of his shall have commenced and has pending, *or shall commence and have pending,* any suit or process in any other court against any officer or person who, at the time the cause as above alleged in such suit or process arose, was in respect thereto acting or professing to act, mediately or immediately, under the authority of the United States, unless such suit or process, if now pending in such other court, shall be withdrawn or dismissed within thirty days next after the passage of this act."<br>(Italics supplied as to language deleted from the Act as adopted). | "SEC. 8. *And be it further enacted,* That no person shall file or prosecute any claim or suit in the court of claims, or an appeal therefrom, for or in respect to which he or any assignee of his shall have commenced and has pending any suit or process in any other court against any officer or person who, at the time of the cause of action alleged in such suit or process arose, was in respect thereto acting or professing to act, mediately or immediately, under the authority of the United States, unless such suit or process, if now pending in such other court, shall be withdrawn or dismissed within thirty days after the passage of this act." |

———◆———

While no discussion of the reasons for the deletion of the words "or shall commence and have pending" from the bill as applied to a suit in another court, we must conclude that this deletion by Congress was not inadvertent. Congress clearly intended that if a claimant "shall have commenced and has pending" a suit

in another court against any officer of the United States, the Court of Claims was to be divested of jurisdiction over the same claim when brought against the United States if the claim was filed *thereafter* in this court. Equally compelling is the conclusion that Congress intentionally deleted the very language from the Act of 1868 that plaintiffs would now have us read into Section 1500 for this sole purpose. The statute of 1868 was enacted to eliminate duplication of litigation between claimants and the Government or its agents, and to prevent conflicts of jurisdiction between the Court of Claims and other courts. Section 1500 was enacted with the same basic legislative purpose.

In 1874, Congress undertook to consolidate and condense all the then scattered laws of the United States into a single volume, the Revised Statutes of 1874. Section 1067 of the Revised Statutes did change the phraseology of Section 8 of the Act of June 25, 1868, as follows:

|  |  |
|---|---|
| *Act of June 25, 1868* | *Revised Statutes* |
| "SEC. 8. *And be it further enacted,* That no person shall file or prosecute any claim or suit in the court of claims, or an appeal therefrom, for or in respect to which he or any assignee of his *shall have commenced and has pending any suit* or process in any other court against any officer or person who, at the time of the cause of action alleged in such suit or process arose, was in respect thereto acting or professing to act, mediately or immediately, under the authority of the United States, unless such suit or process, if now pending in such other court, shall be withdrawn or dismissed within thirty days after the passage of this act." (Italics supplied.) | "SEC. 1067. No person shall file or prosecute in the Court of Claims, or in the Supreme Court an appeal therefrom, any claim for or in respect to which he or any assignee of his *has pending* in any other court any suit or process against any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, mediately or immediately, under the authority of the United States." (Italics supplied.) |

However, there is no evidence of any intention of Congress in 1874 to change the real meaning of Section 8 of the Act of 1868. On the contrary, Congressman Butler, in explaining the purpose of the 1874 Revised Statutes, stated:

"We have not attempted to change the law, in a single word or letter, so as to make a different reading or different sense. All that has been done is to strike out the obsolete parts and to condense and consolidate and bring together statutes in *pari materia;* so that you have here, except insofar as it is human to err, the laws of the United States under which we now live."

(Remarks of Representative Butler, 2 Cong.Record, 43d Cong. 1st sess. p. 129).

The minor change in phraseology from "shall have commenced and has pending" any suit in any other court, as stated in Sec. 8 of the Act of 1868 to the words "has pending in any other court" in the Revised Statutes of 1874, when considered with the clear expression of intent in revision "not * * * to change the law" does not evidence any change in the intent of Congress.

Section 1067 of the Revised Statutes of 1874 was adopted without change by Section 154 of the review and codification of the Judicial Code in 1911 (March 3, 1911, c. 231, 36 Stat. 1138, Sec. 154).

Section 1500 of the present Judicial Code changed the phraseology of Section 154 of the Judicial Code of 1911 as follows:

"SEC. 154. No person shall file or prosecute in the Court of Claims, or in the Supreme Court on appeal therefrom, any claim for or in respect to which he or any assignee of his *has pending* in any other court any suit or process against any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, mediately or immediately, under the authority of the United States." (Italics supplied.)

"§ 1500. *Pendency of claims in other courts.*
"The Court of Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee *has pending* in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States." (Italics supplied.)

As explained by the Revisor's notes which accompanied the Committee Report, the change of language in Section 1500 was to omit from the former statute the words "or in the Supreme Court on appeal therefrom" as unnecessary. The Revisor merely noted that other changes were made in phraseology. Although the addition of the United States as a party defendant was a substantive change in the statute, this does not change its legal effect on the question now before us.

From this review of the legislative history of Section 1500, we conclude that there is no evidence of any intent of Congress at any time to change the legal effect of the original Section 8 of the Act of June 25, 1868. The clear meaning and legislative intent of this 1868 Statute was to prevent this court from taking jurisdiction of a claim *only* when the same plaintiff already "shall have commenced and has pending" another suit on the same claim in another court. This same clear meaning and intent is still evident in Section 1500, despite minor changes in phraseology which do not effect any change in jurisdiction.

We can find no reason to ascribe to Congress in its adoption of Section 1500 an intent to disrupt the rule of comity and equal status which the Congress has so long and clearly recognized in establishing the jurisdiction of the Court of Claims and other courts in tax cases. On the contrary, we conclude that

the only reasonable interpretation of the statute is that it serves to deprive this court of jurisdiction of any claim for or in respect to which plaintiff has pending in any other court any suit against the United States, *only* when the suit shall have been commenced in the other court *before* the claim was filed in this court.

An opposite conclusion could lead to results far more excessive in delay and expense of fruitless litigation before this court than are those to which we have alluded in this case. For example, a plaintiff might carry his claim for tax refund in this court through trial to a Trial Commissioner's findings and opinion, then through oral argument before the court and then, becoming suddenly apprehensive about the outcome or perhaps even after an adverse judgment, say to this court, "Let's call the whole thing off" by merely filing an identical petition in the District Court. Such a *"reductio ad absurdum"* could never have been intended by Congress in the enactment of Section 1500. This court cannot permit control of its jurisdiction and administration of its functions at the mere whim of a litigant.

Illustrative of this judicial recognition of the meaning of this statute under established rules of concurrent jurisdiction and comity between courts is the order just entered on February 19, 1965, by the United States District Court for the Eastern District of Kentucky on this

same cause of action in Tecon Engineers, Inc. v. United States of America. The order recites that:

"This court has original jurisdiction concurrent with the jurisdiction of the United States Court of Claims over all the questions presented by the record in this case. 28 USCA 1346(a) (1). Prior to January 26, 1965 (the date on which this action was filed in this court) the plaintiff filed an action in the United States Court of Claims involving the same questions and asking the identical relief set forth in this proceeding, thereby electing to institute and prosecute its action in that court as provided by the statute.

"The United States Court of Claims accepted the jurisdiction of the action and on February 10, 1965 entered an order that the plaintiff's petition be dismissed with prejudice, thereby fully adjudicating the claims of the plaintiff in this case.

"It is ordered that this case be dismissed at the cost of the plaintiff."

The cases cited by plaintiffs (and the other relevant cases) are not particularly germane to our resolution of the correct interpretation of Section 1500, with respect to the facts of this case. For the most part the cases involve situations where suit was filed in another court prior to,[3] or simultaneous with,[4] the filing of the petition in this court. The other situations are where suit was filed in another court after this court relin-

quished jurisdiction,[5] or involved the appellate jurisdiction of the Supreme Court.[6] To the extent any of the cases lend themselves as support for plaintiffs' contention that subsequent filing of a similar action in another court ousts this court of jurisdiction, there is no indication that the issue of priority was ever fully briefed, considered or decided.[7] With this background, we cannot draw upon the prior caselaw for direction in this decision.

In plaintiffs' Request for Oral Argument on Jurisdictional Question, the following statements were made:

"The plaintiffs notified the Commissioner of this Court and Government counsel, by letter hand delivered on January 27, 1965, that the plaintiffs have elected to stand on their motion to dismiss for lack of jurisdiction and that they will not go to trial. We add here the specific statement that the plaintiffs will not further prosecute their cases in this Court.

"Under these circumstances, there is adequate time for hearing oral argument and rendering a decision on the plaintiffs' jurisdictional motion since there is no necessity for a trial on February 1, 1965. If the Court grants the plaintiffs' motion, there should not be, and should not have been, any such trial. If the Court denies the plaintiffs' motion, the case will be dismissed with prejudice for failure of the plaintiffs to proceed to trial or further prose-

3. Los Angeles Shipbuilding & Drydock Corp. v. United States, 152 F.Supp. 236, 138 Ct.Cl. 648 (1957); Wessel, Duval & Co., Inc. v. United States, 124 F.Supp. 636, 129 Ct.Cl. 464 (1954); Joyce v. United States, 48 F.Supp. 520, 98 Ct.Cl. 427 (1943); in Maguire Industries v. United States, 86 F.Supp. 905, 114 Ct.Cl. 687 (1949); cert. denied 340 U.S. 809, 71 S.Ct. 36, 95 L.Ed. 595, the Tax Court litigation antedated suit in this court.

4. National Cored Forgings Co., Inc. v. United States, 132 F.Supp. 454, 132 Ct. Cl. 11 (1955).; British American Tobacco Co., Ltd. v. United States, 89 Ct.Cl. 438 (1939); cert. denied 310 U.S. 627, 60

S.Ct. 974, 84 L.Ed. 1398, also see Hobbs v. United States, No. 244–63, Ct.Cl., December 11, 1964, which suit in the Fifth Circuit was filed one day after the petition was filed in this court.

5. Ex parte Skinner & Eddy Corp., 265 U.S. 86, 44 S.Ct. 446, 68 L.Ed. 912 (1924).

6. Corona Coal Co. v. United States, 263 U.S. 537, 44 S.Ct. 156, 68 L.Ed. 431 (1924).

7. See Hobbs v. United States, supra; see particularly the briefs in the Supreme Court in Corona Coal Co. v. United States, supra.

cute their cases in this Court. The plaintiffs are so certain that the Court no longer has jurisdiction in these cases, and that this position will ultimately be upheld, that they accept the risk of the alternative result of a dismissal of their claims with prejudice."

Failure to prosecute is ground for dismissal of a petition with prejudice under Rule 67(b) of this court. Accordingly, we hold that we have jurisdiction of these cases, and direct that plaintiffs' motion to dismiss their petitions for lack of jurisdiction be denied, and that these cases be dismissed with prejudice, in accordance with the order of this court dated February 10, 1965.