**ARIZONA HELICOPTERS, INC. and Air Services International, Inc.**

v.

**The UNITED STATES.**

No. 329–83C.

United States Claims Court.

March 16, 1984.

Phillip J. Kolczynski, Los Angeles, Cal., for plaintiff. Engstrom, Lipscomb & Lack, Los Angeles, Cal., of counsel.

Michael T. Paul, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

LYDON, Judge:

This case comes before the court on defendant's motion to dismiss plaintiffs' complaint for lack of jurisdiction. Defendant's motion is based on the contention that since plaintiffs have filed a claim in a United States District Court, which is still pending, this court is without jurisdiction to consider a similar claim filed later in this court. Defendant relies on 28 U.S.C. § 1500, as amended by Pub.L. No. 97–164, 96 Stat. 40 on April 2, 1982, in support of its motion. For reasons set forth below, it is determined that defendant's motion must be denied. However, it is concluded that judicial economy and efficiency will be best served, in this case, by suspending proceedings in this court until a final decision is reached in the District Court action.

### I.

Under Contract No. 49–101–120, effective May 17, 1977, Arizona Helicopters, Inc., one of two plaintiffs in this case, agreed to provide to the United States Department of Agriculture (USDA), United States Forest Service (Forest Service) the services of two Bell Helicopters and flight crews to provide air support in fire suppression activities in various national forests in California and Oregon. The contract provided that these services were to include transportation of fire fighting personnel, observation, and actual fire suppression flights utilizing water tanks installed on the helicopters. The two Bell Helicopters called for by the contract were owned by Air Services International, the other plaintiff in this case, and were leased to Arizona Helicopters, Inc.

On July 24, 1977, a fire started in the Angeles National Forest near Los Angeles, California. Both of the Bell Helicopters under the contract mentioned above were sent to the helipad facility of the Forest Service during that day and both helicopters commenced fire fighting operations.

In the late afternoon of July 24, 1977, the Forest Service decided to operate both helicopters under Forest Service-created night operation procedures. These procedures involved the use of goggles which intensify available light. These goggles and their use had been under development for about 4 years by the Forest Service and had been used in actual operations for a little over a year.

One of the Bell Helicopters under contract was identified as "Bell 212 helicopter N9923K" (N9923K Arizona). At about 8:30 p.m., a briefing was given to the crew of N9923K by the Air Service Manager for flight operations, an employee of the Forest Service. The Air Service Manager controlled the flights of helicopters and supervised their landing and takeoff procedures through radio and visual contacts at the helipad.

The Los Angeles County Fire Department also provided a helicopter and crew for use in fighting the fire in the Angeles National Forest on July 24, 1977. This helicopter was identified as "Bell 205A–1 helicopter N8192J" (N8192J Los Angeles). The crew of N8192J was not in attendance at the 8:30 p.m. briefing mentioned above.

Nighttime operations involving the N9923K Arizona and the N8192J Los Angeles helicopters began at about 9:30 p.m. on July 24, 1977. Both helicopters were engaged in water runs during these operations. After both helicopters were airborne, loaded with water, some three previous takeoffs and landings had taken place, air-to-air communications were established and it was agreed that N8192J Los Angeles would follow N9923K on the next water run.

While N9923K Arizona was making its final approach to landing after its fourth water run, N8192J Los Angeles was making its final landing approach behind N9923K

Arizona at a lower altitude and at a faster ground speed. When both aircraft were approximately 75 feet above the ground, the main rotor blade of the N8192J Los Angeles helicopter came in contact with the landing skid and the tail assembly of the N9923K Arizona helicopter. This contact caused the N8192J Los Angeles helicopter's main rotor blades and assembly to fail and this helicopter dropped rapidly to the ground, hitting on a hill and rolling some distance down the hill. The N9923K Arizona helicopter was able to make a relatively controlled descent but the impact on touchdown was extremely severe and this helicopter suffered damage.

Plaintiffs, on or about September 15, 1977, as supplemented on April 7 and December 28, 1977, filed an administrative claim for property damage in the amount of $1,179,179.14 with the National Fire Prevention and Control Administration (later reorganized into the Federal Emergency Management Agency, Executive Order No. 12127, 44 F.R. 19367 (Mar. 31, 1979), for the "amount of direct expenses and direct losses incurred by such fire service as a result of fighting such fire" on the authority of 15 U.S.C. § 2210, as amended by Pub.L. No. 97–164, 96 Stat. 45 (1982).[1] This claim was denied on March 29, 1983, by the Federal Emergency Management Agency.[2]

Plaintiffs also filed an administrative claim in the amount of $1,179,179.14 with the USDA under the Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq. (1976). When the Department of Agriculture failed to make final disposition of said claim within 6 months after filing, plaintiffs deemed their claims to be finally denied administratively pursuant to 28 U.S.C. § 2675(a) (1976). Thereafter, plaintiffs filed suit against the United States, *inter alia,* in the United States District Court Central District of California on February 1, 1980, (Case No. CV–78–2212 RMT) for damages to their helicopter N9923K Arizona, for loss of business profits and for other special damages.

In the District Court complaint, plaintiffs alleged that helicopter N9923K Arizona was damaged because defendant negligently conceived helicopter night fire fighting procedures, negligently trained its ground crew personnel in those procedures, negligently supervised and briefed its ground crew personnel in the procedures to be employed on the missions to be flown and negligently controlled actual flight operations, including approaches and landings.

On May 23, 1983, plaintiffs filed suit in this court seeking money damages, the amount of which was not disclosed, for the direct costs and losses it suffered because of the damages to helicopter N9923K Arizona as a result of the July 24, 1977, accident. Plaintiffs filed this claim pursuant to 15 U.S.C. § 2210, *supra.* Plaintiffs seek to recover, *inter alia,* direct losses and costs over and above normal operating expenses, lost income and the expense of procuring and outfitting a replacement helicopter.

## II.

28 U.S.C. § 1500 provides:

Pendency of claims in other courts

The United States Claims Court shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

---

1. Section (d) of 15 U.S.C. § 2210 as amended by Pub.L. 97–164, 96 Stat. 45 (1982) provided:

   "In the case of a dispute arising in connection with a claim under this section, the United States Claims Court shall have jurisdiction to adjudicate the claim and enter judgment accordingly."

2. Plaintiffs also filed an administrative claim in the amount of $1,165,860.29 against the County of Los Angeles on October 24, 1977, as a result of the July 24, 1977, incident in which the N9923K Arizona helicopter was damaged. On December 9, 1977, the County of Los Angeles, having failed to act on the claim, plaintiffs deemed the claim rejected.

The literal language of section 1500, *supra,* would seem to support the granting of defendant's motion herein. However the United States Court of Claims, our predecessor court, cautioned against a literal reading of this section by teaching that this section should not be given a doctrinaire or purely technical interpretation but should be given a reasonable and just construction. *Tecon Engineers, Inc. v. United States,* 170 Ct.Cl. 389, 343 F.2d 943, *cert. denied* 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966). *See also Brown v. United States,* 175 Ct.Cl. 343, 349, 358 F.2d 1002, 1005 (1966).

Dismissal of a complaint is a drastic action. As a result, prior decisions dealing with section 1500 have given strained constructions of this section in efforts to reach what were considered just results despite the seemingly clear language of the section. Such salutary efforts have produced much confusion. One commentator, in an excellent article on the matter, has urged repeal of section 1500 and reliance, instead, on the rule of *res judicata* to combat the wastefulness and expense of duplicative litigation involving similar claims in different courts. *See* Schwartz, *Section 1500 Of The Judicial Code And Duplicate Suits Against The Government And Its Agents,* 55 Geo.L.J. 573 (1967). As the above article so ably demonstrates by historical and judicial research, the legal climate has changed since the basic provisions of section 1500 were originally enacted in 1868. *See Casman v. United States,* 135 Ct.Cl. 647, 649 (1956). There is much truth to the article's conclusion that section 1500 serves no useful purpose in today's legal environment. However, section 1500 remains on the books and cannot be ignored.

In *Frantz Equipment Co. v. United States,* 120 Ct.Cl. 312, 314, 98 F.Supp. 579 (1951) the Court of Claims noted that "[t]he purpose of Sec. 1500, *supra,* was to prohibit the filing and prosecution of the same claims against the United States in two courts at the same time." That purpose can be achieved by dismissal of one of the suits, which may, because of circumstances at a later time, unfairly preclude the achievement of a recovery properly due the litigant had his suit not been dismissed. This possibility makes dismissal of suits in section 1500 situations an unattractive alternative to a court. *See Brown v. United States, supra,* 175 Ct.Cl. at 348–349, 358 F.2d at 1005. On the other hand, a suspension of proceedings in a second court until the first court has ruled on the matter before it prohibits the prosecution of the same claim in the second court and at the same time safeguards the rights of the litigant relative to achievement of a recovery properly due him should changing circumstances reveal that the second court suit can be litigated. *See Armstrong v. United States,* 4 Cl.Ct. 269, at 271 (1984) (Gibson, J).

In the case at bar, there is no question but that the operating facts underscoring the District Court action and the Claims Court suit are the same. It is equally true that in both suits plaintiffs seek to recover money damages from the United States. In the Claims Court action, however, plaintiffs do not rest on 28 U.S.C. § 1491 as their jurisdiction base[3] but instead assert 15 U.S.C. § 2210, *supra,* as the jurisdictional foundation for their claim. Plaintiffs assert that 15 U.S.C. § 2210 was intended to provide an opportunity for recovery that was essentially equitable and remedial in nature for a special class of litigants such as plaintiffs. Thus, plaintiffs seem to argue that their District Court action is legal in nature whereas their claim in this court under 15 U.S.C. § 2210 is equitable in nature. These ramifications are sufficient,

---

3. It is to be noted that plaintiffs operated the helicopter in question under a contract with the United States Forest Service. Neither party made available to the court the contract document. This perhaps is understandable since plaintiffs do not rely on the contract for claim purposes in their complaint. However, the contract may well contain provisions which bear on the liability issue in this case. Plaintiffs' avoidance of the contract seems to result from their unclear assumption that liability is presumed if damages are suffered by them in the course of fire fighting operations. Plaintiffs ignore the contractual nature of their participation in fire fighting operations.

plaintiffs argue, to take their claim in this court outside the pale of 28 U.S.C. § 1500.

 While plaintiffs' arguments are not overly persuasive, they do generate in the court a "benefit of the doubt" feeling which serves to preclude dismissal of their complaint. As indicated previously, a stay of proceedings in this case comports satisfactorily with the purpose of 28 U.S.C. § 1500, *i.e.,* litigation will be prosecuted in only one court.[4] Further, such a course of action preserves for plaintiffs whatever special equitable remedy they seem to feel was given them by 15 U.S.C. § 2210 should they fail for whatever reason to obtain satisfactory legal relief in the District Court action. It is on this latter point that plaintiffs receive the benefit of the doubt herein.[5]

Finally, should plaintiffs win in the District Court it may well moot the case at bar. Should plaintiffs lose in the District Court then plaintiffs may be able to assert whatever equitable rights they feel 15 U.S.C. § 2210 makes available to them. *Brown v. United States, supra,* 175 Ct.Cl. at 348–349, 358 F.2d at 1005. Even if plaintiffs' complaint is dismissed in the District Court, plaintiffs could thereafter still reassert their claim under 15 U.S.C. § 2210 in this court following dismissal of the District Court suit. *See Roberson Lumber Co., Inc. v. United States,* 230 Ct.Cl. 820, 873 (1982). This is not to say, however, that any such suit would be immune from defenses, jurisdictional or otherwise, that defendant might assert at that time. Under existing circumstances, and giving due regard to the submissions of the parties, it is the court's opinion that a stay of proceedings instead of outright dismissal is the better course of action to follow in this case at this time.

In light of the foregoing discussion, defendant's motion to dismiss the complaint is denied. Instead, further proceedings in this case are suspended until a final determination is reached on plaintiffs' claim now pending before the United States District Court Central District of California. Plaintiffs' attorney is directed to submit, by letter to the judge, at six (6)-month intervals, commencing from the date of this opinion, a report as to the status of the District Court action. The first such status report by plaintiffs' attorney shall be submitted on September 15, 1984. However, any significant change in the status of the District Court action should be reported to the judge immediately upon its occurrence.

---

4. Since suit was filed in the District Court first, comity dictates that litigation continue in that court. *Tecon Engineers, Inc. v. United States,* 170 Ct.Cl. 389, 394, 343 F.2d 943, 946, *cert. denied* 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966). Further, the court has been informed that pretrial discovery has been completed in the District Court action and the case is ready for trial, awaiting only its turn on the trial calendar of the District Court judge.

5. The nature and scope of relief under 15 U.S.C. § 2210 was not adequately dealt with by the parties in their briefs or in oral argument. The court herein intimates no view on the nature, scope or availability of relief to plaintiffs under 15 U.S.C. § 2210. The court has assumed solely for purposes of dealing with defendant's motion to dismiss that 15 U.S.C. § 2210 provides a basis for plaintiffs' assertion of a claim for equitable relief.