Robert S. FADEM, Mary O. Fadem, individually and as the general partners in the Rough Acres Ranch Partnership, a California partnership; and Lark Valley Dude Ranch, a California partnership

v.

The UNITED STATES.

No. 323–82L.

United States Claims Court.

Sept. 28, 1987.

Joel C. Estes, San Diego, Cal., attorney of record, for plaintiffs. Alexandra M. Kwoka, of counsel.

George William Sherk, Washington, D.C., with whom was Acting Asst. Atty. Gen. Roger J. Marzulla, for defendant. Lawrence A. McHenry, Dept. of the Interior, of counsel.

## ORDER

YOCK, Judge.

This inverse condemnation case is currently before the Court on the defendant's Motion to Dismiss/Stay Proceedings. The defendant's motion seeks: (1) to dismiss without prejudice Counts I and II of the complaint, or in the alternative to stay proceedings in those counts until the plaintiffs' administrative claim filed under the Federal Tort Claims Act (FTCA) has been decided by the Department of the Interior; (2) to dismiss, or in the alternative to stay, Count IV of the complaint (border dispute/resurvey issues) until the plaintiffs' later-filed District Court actions involving the same issues have been decided; and (3) to dismiss the plaintiffs' personal injury claims contained in Count III of the complaint for lack of jurisdiction. As to all three mat-

ters, the defendant's motion is granted as discussed herein.

### Facts

Plaintiffs, Robert S. and Mary O. Fadem, are the sole partners of plaintiff Rough Acres Ranch Partnership. Plaintiff Lark Valley Dude Ranch Partnership owns an interest in certain improvements on Rough Acres Ranch.

Rough Acres Ranch is composed of four parcels of land totaling some 1,720 acres, and situated in the McCain Valley, San Diego County, California. Each parcel is either bordered or surrounded by land owned by the United States. The Government-owned land is managed by the Department of the Interior's Bureau of Land Management (BLM) and used as a recreational and wildlife area.

From 1956 to 1965, the Fadems, along with other owners, improved the ranch property, adding farm and ranch buildings, an air strip, drilling wells, and building a dude ranch resort complete with a dining and gathering building and 29 cottages. Other portions of the land were used for growing feed, fodder and grazing beef cattle. The agricultural aspects of the ranch, as well as the scenic and unpopulated surroundings, were calculated to draw guests to the resort. The plaintiffs invested large amounts of time and money in developing Rough Acres Ranch in alleged reliance on assurances made by various BLM officials that the BLM intended to maintain and carefully develop its property for traditional recreational purposes.

In 1965, the Fadems became the sole owners of the ranch property. Lark Valley Dude Ranch partnership retained, however, an ownership interest in the building improvements on the property.

On August 17, 1961, the Government's 38,692 acre tract of land surrounding and adjoining the Rough Acres Ranch officially became known as the McCain Valley National Cooperative Land and Wildlife Management Area. In 1963, the area was designated by the BLM as the McCain Valley Resource Conservation Area. In the fall of 1964, the McCain Valley Hunting Access Project was instituted, and in 1964 and 1965, the United States constructed the McCain Valley Road extension to provide increased public access to the McCain Valley area. The road extension was designed to pass by and to the north of the plaintiffs' property. At the same time, the defendant constructed three public campgrounds in the McCain Valley Area, including the Lark Canyon Campground directly to the north of the plaintiffs' ranch buildings. The general intent of this development was to encourage traditional camping and recreational activity in the primitive setting of McCain Valley.

Thereafter, public use of the area increased dramatically. A portion of the increased activity in the McCain Valley was related to the use of off-road vehicles (ORVs).

In 1977, Executive Order 11989 was issued requiring federal agencies, including the BLM, to "immediately close" areas or trails whenever it was determined that "use of off-road vehicles will cause or is causing considerable adverse effects on the soil, vegetation, wildlife, wildlife habitat or cultural or historic resources of particular areas or trails of the public lands * * *." In response, the BLM drafted and adopted the Wildlife Habitat Management Plan of 1979 and the McCain Valley Resource Conservation Area Recreation Activity Management Plan of 1979.

The plaintiffs contend that the implementation of this plan resulted in the closing of the land east of the McCain Valley Road extension to ORV use. The plaintiffs allege further that the closing of this portion of the McCain Valley resulted in the shifting of ORV activities to the west side of the McCain Valley Road, which is immediately adjacent to the north section of the plaintiffs' ranch. As a result, the plaintiffs argue that the increased ORV activity next to their property and the Government's failure to adequately control and supervise this activity has accelerated erosion on the Government's property which, in turn, has altered the surface water flow, thereby causing severe erosion of the plaintiffs' property. In addition, the plaintiffs assert

that large amounts of dust began to blow across their ranch and that noise from the ORVs rose to offensive levels. Also, the plaintiffs allege that the increased ORV activity caused their reservoir to fill with silt and sediment, thereby rendering the ranch's water supply unusable.

On November 27, 1981, the plaintiffs filed with the Department of the Interior's Bureau of Land Management (BLM) an administrative claim pursuant to the authority contained in the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. In that claim, the plaintiffs requested damages in tort for negligent road construction and maintenance and for inadequate and negligent supervision and control of the Lark Canyon Off Road Vehicle (ORV) Playground. The plaintiffs complained of soil erosion, noise pollution, and mental and emotional distress. The plaintiffs requested property damages in the amount of $442,800 and personal injury damages in the amount of $5 million.

Some eight months after the plaintiffs had filed their administrative tort claim with the BLM, the plaintiffs, on July 6, 1982, filed their complaint in the United States Court of Claims (now United States Claims Court) alleging a taking of their property through a series of tortious actions by agents and employees of the Government (BLM). As initially filed, the complaint contained three counts. Count I alleged a taking of their entire ranch containing some 1,720 acres. Count II alleged a taking of only part of their property containing some 600 acres. Count III alleged that the activities taking place on the BLM land surrounding their property amounted to a nuisance which caused mental distress and emotional injury to their persons. In the complaint, the plaintiffs asserted that the Government negligently built and maintained the McCain Valley Road which caused both erosion to and deposits of sediment on their land. In addition, the plaintiffs allege that the Government failed to supervise and control the recreational use (ORV use) of the adjacent land. They assert that the Government, through negligence and lack of supervision, has altered the surface water flow on their

ranch, polluted the plaintiffs' water supply, caused dust to flow over the plaintiffs' property, reduced the variety and number of wildlife in the area, and generally and substantially interfered with the plaintiffs' quiet enjoyment of their ranch property. The plaintiffs' requested damages under Count I in the amount of $40 million for their ranch; Count II in the alternative requests $30 million; and Count III requested $35 million for emotional distress and related personal injuries.

On May 16, 1983, the plaintiffs amended their administrative tort claim pending at the Department of the Interior. In their amended tort claim, the plaintiffs specifically realleged virtually all of the tortious acts and consequent damages that were mentioned in the complaint filed in this taking case. The property damages requested were increased dramatically from $442,800 to $33 million. Personal injury damages requested declined from $5 million to $3.5 million. Other than the damage amounts requested and the greater detail as to the specific tortious acts and their consequences, however, the essence of the plaintiffs' federal tort claim remained the same as initially filed on November 27, 1981.

Following the amendment of their administrative tort claim, the plaintiffs filed a complaint in the state courts of California on December 9, 1983, complaining of further tortious activity by employees and agents of the United States Government. This case specifically alleged that agents and employees of the Government trespassed onto their ranch, stole personal property consisting of culverts and culvert connectors, and used that property to repair the McCain Valley Road. Since the complaint was directed against the United States and its employees and agents, the case was ordered transferred to the Federal District Court for the Southern District of California on June 28, 1984. *Fadem v. Yates*, Docket No. 84–0306. This case was nearing completion when the parties stipulated that the case should be stayed pending the resolution of the case at issue here in this Court (i.e., the taking case). Judge

Rhoades of the United States District Court for the Southern District of California ordered the stay on July 7, 1986, subject to reconsideration if the taking case before this Court were stayed.[1]

Following the filing of the plaintiffs' culverts and connectors case on December 9, 1983, the plaintiffs commenced a second action in Federal District Court on December 21, 1984. *Fadem v. United States,* Docket No. 84–2971. In that case, the plaintiffs alleged that the Government (BLM) conducted an invalid resurvey in 1971 (approved in 1980) of the boundaries between their ranch and the BLM land, which resulted in the BLM asserting title to some 43 acres of land that the plaintiffs claimed to own. The plaintiffs asked the District Court to establish the correct boundaries between themselves and the Federal Government under the authority of the Bona Fide Rights Act, 43 U.S.C. § 772. On July 9, 1985, Senior Judge Turrentine of the Southern District of California dismissed the plaintiffs' Bona Fide Rights Act case, finding that the Quiet Title Act, 28 U.S.C. § 2409a, provided the exclusive means by which adverse claimants could challenge the United States' title to real property. Judge Turrentine did give the plaintiffs 30 days to amend their complaint to allege jurisdiction under the Quiet Title Act. Instead of amending their complaint, however, the plaintiffs appealed the order to the United States Court of Appeals for the Ninth Circuit. On June 16, 1986, the Ninth Circuit affirmed Judge Turrentine's dismissal of the plaintiffs' Bona Fide Rights Act case.

On April 2, 1985, some three months after the plaintiffs initially filed their Bona Fide Rights Act case in the District Court, the plaintiffs filed their Amended and Supplemental Complaint in this Court. This amended complaint added a fourth count to the currently pending inverse condemnation (taking) case. Count IV alleged that if the 1971 resurvey run by the BLM proved to be valid, the Government had taken some 43 acres of the plaintiffs' ranch property. The plaintiffs valued these acres taken at $360,000.

Some 10 days later, on April 12, 1985, the plaintiffs filed their second amended administrative tort claim with the BLM in which they added the 1971 BLM resurvey action to the list of tortious actions causing personal injury and property damage.

Finally, on August 7, 1985, the plaintiffs filed a third action in Federal District Court, this one under the authority of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706. *Fadem v. United States,* Docket No. 85–1787. Here, the Fadems basically repleaded their already dismissed Bona Fide Rights Act claim, alleging that the District Court should declare the BLM resurvey to be invalid. In short, plaintiffs again asked the District Court to solve the boundary dispute between the Government (BLM) and themselves.

Thereafter, the parties in the APA case filed several motions. As near as this Court can determine from the documents submitted to it, the plaintiffs asked the District Court to allow two new counts to be added to the APA count in that case. The first count to be added was to be a *Bivens* type count (*Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)), which would allow the plaintiffs to sue employees and agents of the United States in their individual capacities for violations of their constitutional rights. The second amended count requested was the addition of a Federal Tort Claims Act count, under which the court could examine the various tortious acts that plaintiffs alleged had caused damage to their property and persons.

On the Government's motion to dismiss, Judge Brewster of the Southern District of California, by order of May 31, 1986, denied the plaintiffs' motion in regard to the *Bivens* count, but allowed the plaintiffs to file an amended Federal Tort Claims Act count. It is simply unclear to this Court, however,

---

1. The current motion for dismissal/stay of the taking case before this Court was pending at the time the District Court's stay order was issued in the culverts and connectors case, *Fadem v. Yates,* Docket No. 84–0306.

what happened to the original APA (re-survey/border dispute) count. In any event, Judge Brewster, in his order of May 31, 1986, stayed the entire case (whatever remained) pending further proceedings in this Court, and in the Ninth Circuit on the Bona Fide Rights Act appeal (subsequently decided against the plaintiffs on June 16, 1986).

Thus, the current status of the plaintiffs' various actions is the following. Plaintiffs still have their administrative Federal Tort Claims Act claim pending before the Department of the Interior. That claim was initially filed on November 27, 1981. Also pending is plaintiffs' inverse condemnation (taking) case filed on July 6, 1982, before this Court. A motion to dismiss or stay was filed in this matter on February 18, 1986, and was ready for decision on December 6, 1986. Plaintiffs have two cases pending (and stayed) in the District Court awaiting this Court's disposition. The case before Judge Brewster is a Federal Tort Claims Act action (apparently with the APA/resurvey/border dispute still attached). The case before Judge Rhoades is likewise a Federal Tort Claims Act action which involves the conversion of personal property (culverts and connectors) by the Government. All of these pending actions arise out of the same factual setting.

### Discussion

With this factual and procedural background in mind, the Government in this taking case filed a motion to dismiss/stay the Claims Court proceeding on February 18, 1986.[2] The Government's stated purpose for bringing this motion is to bring some order out of chaos, and this Court applauds that purpose.

Basically, there are three issues to be decided under the defendant's motion. The first issue is whether the plaintiffs' taking case before this Court (Counts I and II) should be dismissed without prejudice or stayed until the Department of the Interior can issue its final administrative decision in

regard to the plaintiffs' pending Federal Tort Claims Act administrative claim. The second issue to be decided is whether 28 U.S.C. § 1500 requires this Court to dismiss Count IV (the resurvey/border dispute issue) because the issue is currently pending (although stayed) before other federal courts. The third issue to be decided is whether Count III (tortious actions that have allegedly caused personal injuries) should be dismissed since this Court lacks jurisdiction over matters sounding in tort (28 U.S.C. § 1491(a)(1)).

### I. Administrative Tort Claims

■ As stated above, the first issue to be decided is whether the plaintiffs' taking case before this Court (Counts I and II) should be dismissed without prejudice or stayed until the Department of the Interior can issue its decision in regard to the plaintiffs' pending Federal Tort Claims Act administrative claim.

This Court concludes that there are several good reasons why it is appropriate under the circumstances here present to stay this proceeding until the Department of the Interior decides the plaintiffs' administratively filed Federal Tort Claims Act claim.

First and foremost, the factual setting of this case involves allegations of tortious conduct on the part of the Government. Although the plaintiffs have seen fit to follow two distinct avenues to effect a damage recovery from the United States, both lines of attack start with alleged tortious acts. In their complaint before this Court, the plaintiffs have realleged all the tortious acts that were earlier described in their administrative claim pending before the Department of the Interior. In the administrative claim, the plaintiffs want damages to recompense them for the Government's tortious acts. In the complaint before this Court, the plaintiffs' theory for recovery is that a series of tortious acts have so substantially reduced the value of their real

---

**2.** Defendant previously filed a motion for summary judgment. This Court denied that motion on February 4, 1985. Plaintiffs later filed a motion for summary judgment as to Count I of their complaint on May 19, 1986. This motion and all other matters have been suspended pending the Court's resolution of defendant's motion to dismiss/stay proceedings.

property as to amount to a taking, i.e., a condemnation of their property by the United States Government.

The Court has ruled earlier that as a legal proposition, the plaintiffs' taking theory is valid.[3] *See Eyherabide v. United States*, 170 Ct.Cl. 598, 345 F.2d 565 (1965); *Bettini v. United States*, 4 Cl.Ct. 755 (1984). However, plaintiffs' success in clearing the first jurisdictional hurdle in this Court does not disencumber them of their own prior decisions. The plaintiffs chose to file first an administrative tort claim with the Department of the Interior pursuant to the authority of the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. The Government, therefore, should have the opportunity to investigate the tortious acts alleged and come to an administrative decision as to how best to deal with those allegations. It is quite possible that the matter could end with the final administrative decision, thereby saving this Court (and/or the District Court) no end of precious judicial time and energy. In any event, that is what the judicial doctrines of exhaustion of administrative remedies and primary jurisdiction are all about. *See Burlington Northern R.R. Co. v. United States*, 752 F.2d 627 (Fed.Cir.1985); *Otter Creek Coal Co. v. United States*, 224 Ct.Cl. 697 (1980); *Ainsley v. United States*, 8 Cl.Ct. 394 (1985).

This Court believes that the Department of the Interior, the federal agency that is alleged to have committed the tortious acts at issue here, should have the first opportunity to investigate the matter, to review it, and hopefully to bring the matter to a conclusion. If the administrative decision does not conclude the matter, then the plaintiffs retain their right to go forward with their judicial remedies—either in this Court under their taking theory, or in the District Court under a Federal Tort Claims Act theory of recovery.

This Court, however, should not be in the position of preempting the United States Government from righting an alleged

wrong at the administrative level if that is possible. Neither should this Court, in the first instance, be in the position of forcing the United States Government to "purchase" land it apparently does not want or does not need. It may ultimately come to that, if the plaintiffs can sustain their very heavy burden of proof, but this Court should not entertain these constitutional claims in the first instance. It really should be only in the last instance. The Court does not take lightly its responsibility to refrain from deciding constitutional issues when the resolution of nonconstitutional issues could possibly be dispositive. *See Hagans v. Lavine*, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974). In summary, this Court should refrain from acting until a final decision is reached on the plaintiffs' administrative claim. Thus, a stay is appropriate under the circumstances here present.

Having agreed with the defendant, however, that this taking case (at least Counts I and II) should be stayed pending the Department of the Interior's administrative decision on the underlying tort claims involved, this Court must very quickly add that it will not allow the agency to postpone indefinitely issuing its final administrative decision. *See Otter Creek Coal v. United States, supra*, 224 Ct.Cl. at 699–700. The plaintiffs' administrative claim was initially filed on November 27, 1981, some six years ago. It is time for action. Moreover, defendant's counsel, having moved this Court for the order he has now succeeded in getting, has vouched for the good faith of the agency in moving this matter forward with all due speed. With all of the above considered, therefore, this Court hereby orders the Secretary of the Interior to conclude and decide the plaintiffs' administrative Federal Tort Claims Act claim within six months or by March 28, 1988. *See* 28 U.S.C. § 1491(a)(2). Thereafter, the parties are to file individual status reports on or before April 15, 1988.

---

**3.** Defendant's Motion for Summary Judgment was denied February 4, 1985 in oral hearing. Defendant's motion was based on the theory that this Court had no jurisdiction to decide matters sounding in tort, pursuant to 28 U.S.C. § 1491(a)(1).

## II. Pending District Court Actions

■ The second issue to be decided is whether 28 U.S.C. § 1500 requires this Court to dismiss Count IV (the resurvey/border dispute matter) for lack of jurisdiction, because that same issue is currently pending (although stayed) before two other Federal District Courts.

The defendant has framed its argument in the alternative. It believes that 28 U.S.C. § 1500 precludes this Court from going forward with Count IV because the very same matter, i.e., the resurvey/border dispute issue, is currently pending before two Federal District Courts. In the alternative, however, the defendant is asking this Court to do with Count IV what it did with Counts I and II, i.e., dismiss without prejudice or stay the issue pending a final decision on the matter in the District Court actions.

Having decided in section I of this order to stay Counts I and II pending the final administrative decision on the plaintiffs' federal tort claims, it appears appropriate at this juncture to do the same in regard to Count IV. Count IV is, after all, another taking claim, to the extent that the 1971 resurvey involved is declared to be valid and binding by appropriate authority. Thus, this Court will stay Count IV as it did Counts I and II until, in this instance, the District Courts have acted in the two cases currently before them. *See Arizona Helicopters, Inc. v. United States*, 4 Cl.Ct. 662 (1984).

The jurisdictional statute at issue, 28 U.S.C. § 1500 (1982) provides in pertinent part:

The United States Claims Court *shall not have jurisdiction* of any claim for or in respect to *which the plaintiff or his assignee has pending in any other court any suit or process against the United States* * * *. [Emphasis added.]

At first impression, this statute is rather extensive in scope. However, the leading case interpreting the statute has reduced that scope to a considerable extent. In *Tecon Engineers, Inc. v. United States*, 170 Ct.Cl. 389, 343 F.2d 943 (1965), *cert. denied*, 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966), the United States Court of Claims held that:

We can find no reason to ascribe to Congress in its adoption of Section 1500 an intent to disrupt the rule of comity and equal status which the Congress has so long and clearly recognized in establishing the jurisdiction of the Court of Claims and other courts in tax cases. On the contrary, we conclude that the only reasonable interpretation of the statute is that it serves to deprive this court of jurisdiction of any claim for or in respect to which plaintiff has pending in any other court any suit against the United States, *only* when the suit shall have been commenced in the other court *before* the claim was filed in this court.

170 Ct.Cl. at 399, 343 F.2d at 949 (emphasis in original). This interpretation of 28 U.S.C. § 1500 has been consistently followed in the United States Claims Court. Most recently, see *National Steel and Shipbuilding Co. v. United States*, 8 Cl.Ct. 274 (1985); and *A.C. Seeman, Inc. v. United States*, 5 Cl.Ct. 386 (1984). *But compare Keene Corp. v. United States*, 12 Cl.Ct. 197 (1987), *appeal docketed*, No. 87–1332 (Fed.Cir. May 7, 1987) (following precedent but criticizing the *Tecon Engineers* interpretation of the statute).

As indicated earlier, the plaintiffs filed their taking case in this Court on July 6, 1982. At that time, the complaint consisted of three counts. The first two were taking counts (based on tortious acts), and the third was a tort (personal injury) count. Thereafter, the plaintiff filed two successive tort-based actions (the culverts and connectors case, docket No. 84–0306, and the Bona Fide Rights Act case, docket No. 84–2971) in the District Court, and all of the three cases were based on the same set of facts. Both of the District Court cases placed into issue the 1971 resurvey/border dispute problem between the parties. After the two District Court cases were filed, the plaintiffs returned to the Claims Court and filed their Amended and Supplemental Complaint which added Count IV. Count IV alleged that if the 1971 resurvey was

subsequently found to be valid, the Government had taken some 43 acres of their land.

From this scenario, the Government contends that the resurvey/border dispute issue was filed first in the District Court and thus this Court, under the *Tecon Engineers* case, is bound to dismiss the action for want of jurisdiction pursuant to 28 U.S.C. § 1500.

Although the matter is certainly not free from doubt, this Court concludes that 28 U.S.C. § 1500 does not require the dismissal of Count IV.

In the first place, this Court is trying to make some order out of chaos, and dismissing Count IV instead of staying the matter in this Court would add to instead of subtract from the chaos. Count IV is, after all, another "taking" count that may ultimately have to be dealt with by this Court. Thus, to stay Counts I and II which are taking counts and dismiss Count IV which is also a taking count simply makes no rational sense.

Secondly, Count IV is an amendment that relates back to the time of the plaintiffs' initial filing. In their original complaint, plaintiffs alleged that their *entire* property has been taken by the United States Government for public use. Plaintiffs' amended complaint "merely expanded or amplified what was alleged in support of the cause of action already asserted." *Seaboard Airline Ry. v. Renn*, 241 U.S. 290, 36 S.Ct. 567, 60 L.Ed. 1006 (1916). *See also Bethlehem Fabricators, Inc. v. British Overseas Airways Corp.*, 434 F.2d 840 (2d Cir.1970); *White Mountain Apache Tribe of Arizona v. United States*, 8 Cl.Ct. 677, 682–83 (1985); *Smith v. Piper Aircraft Corp.*, 18 F.R.D. 169 (M.D.Pa.1955). Thus, the claim asserted in Count IV was not filed first in the District Court, and 28 U.S.C. § 1500 does not require dismissal.

In *Arizona Helicopters, Inc. v. United States*, 4 Cl.Ct. 662 (1984), actions were filed in the District Court under the Tort Claims Act and in the Claims Court seeking equitable relief. After reviewing the relationship of the two cases, as well as the requirements of 28 U.S.C. § 1500, the Court concluded that:

"[A] stay of proceedings in this case comports satisfactorily with the purpose of 28 U.S.C. § 1500, *i.e.*, litigation would be prosecuted in only one court * * *. Under existing circumstances, and giving due regard to the submissions of the parties, it is the court's opinion that a stay of proceedings instead of outright dismissal is the better course of action to follow in this case at this time.

4 Cl.Ct. at 666 (footnote omitted).

Thus, this Court concludes that 28 U.S.C. § 1500 does not *require* the dismissal for lack of jurisdiction of the plaintiffs' later-added Count IV to their complaint.

Although 28 U.S.C. § 1500 does not require this Court to dismiss Count IV of the plaintiffs' complaint, the Court does believe that a stay of the taking proceedings before this Court is appropriate to allow the District Court to complete its resurvey/border dispute matters as well as the Federal Tort Claims Act matters currently pending before it. Without repeating all the points discussed in section I of this order, it appears to the Court that the constitutional inverse condemnation claims pending before this Court should be the issues of last resort, and the matters that are not constitutional in scope should be resolved first. *See generally Lorillard v. Pons*, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978); *Hagans v. Lavine*, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974); *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 498, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941).

In this connection, it should be pointed out that there is no similar jurisdictional statute that impedes the District Courts. Section 1500 of title 28 restrains only the United States Claims Court in matters that are seemingly concurrent in scope. Also, it is quite clear that the District Courts have exclusive jurisdiction to deal both with matters sounding in tort, 28 U.S.C. §§ 1491(a)(1) and 1346(b), and in matters in which title to United States real estate is placed in issue, 28 U.S.C. § 2409a.

Although the District Courts involved in these cases may deem it appropriate to

continue their stays until the Department of the Interior can issue its final administrative decision on the plaintiffs' Federal Tort Claims Act claim, it is this Court's belief that when a final decision issues, the District Courts should proceed with the actions now pending before them.

In view of the above discussion, this Court, therefore, will stay any further consideration of Count IV of the plaintiffs' complaint until the above discussed action has been accomplished.

### III. Personal Injury Tort Claims

■ In the third and final issue to be decided, the defendant asserts that the plaintiffs' complaint alleges certain personal injury tort claims unrelated to whether or not a taking of the plaintiffs' real property has occurred. Specifically, defendant points to plaintiffs' claim (primarily in Count III) that the Government's activities constituted a nuisance and have caused the plaintiffs, Robert S. and Mary O. Fadem, to suffer emotional distress and other personal injury.

The Tucker Act, 28 U.S.C. § 1491, establishes the jurisdiction of this Court and provides that the United States Claims Court does not have jurisdiction over cases "sounding in tort." As indicated earlier, however, an exception occurs in inverse condemnation cases. If severe enough to deprive a plaintiff of the use of his property, a series of tortious acts can constitute a taking. This exception to the general rule, however, is inapplicable to purely tort claims unrelated to a taking issue. To constitute a taking, such tortious acts must adversely affect a plaintiff's property, not a plaintiff's person. Traditional tort claims, such as claims for personal injury, are clearly beyond the jurisdiction of the Claims Court. *Bigby v. United States*, 188 U.S. 400, 23 S.Ct. 468, 47 L.Ed. 519 (1903); *Norcutt v. United States*, 103 Ct.Cl. 758, 60 F.Supp. 226 (1945); *Persful v. United States*, 102 Ct.Cl. 232 (1944).

This Court is of the opinion that those portions of the plaintiffs' complaint which allege nuisance causing emotional distress constitute pure or traditional tort claims unrelated to the taking issue. They are,

therefore, outside the Court's jurisdiction. As a result, paragraph 13k of Count I and paragraph 20 of Count II of the Amended and Supplemental Complaint will be dismissed insofar as they relate to the alleged infliction of emotional distress and personal injury. Additionally, Count III is to be dismissed in its entirety for the same reasons.

### CONCLUSION

For the reasons discussed herein, those portions of Count I and II of the Amended and Supplemental Complaint which relate to the alleged infliction of emotional distress and personal injury are to be dismissed. Additionally, Count III is to be dismissed in its entirety for the same reasons. Therefore, there being no just reason for delay, the clerk is directed to enter final judgment pursuant to USCC Rule 54(b).

Proceedings as to the remainder of the Amended and Supplemental Complaint, that is, Counts I, II and IV, are to be stayed pending the issuance of the Secretary of the Interior's final administrative decision in the Federal Tort Claims Act claim filed by the plaintiffs with the Department of the Interior on November 27, 1981, and conclusion of the resurvey/border dispute matters and Federal Tort Claims Act matters currently pending before the United States District Court for the Southern District of California.

Further, it is hereby ordered that the Secretary of the Interior will issue its final administrative decision described above on or before March 28, 1988. Thereafter, the parties to this action are to file status reports (joint if possible) on or before April 15, 1988.