**Don NONELLA and Barbara Nonella, Husband and Wife; and 7C Ranch, Inc., an Oregon Corporation, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 230–88L.**

United States Claims Court.

Feb. 14, 1989.

and are deemed without merit.

Lawrence J. Semenza, Reno, Nev., for plaintiffs.

Margaret M. Sweeney, Washington, D.C., for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This action comes before the court on defendant's motion to dismiss for lack of jurisdiction pursuant to 28 U.S.C. § 1500 (1982). At issue is whether a statutory bar to plaintiffs' bringing tort and takings claims against the government in one forum renders section 1500 inapplicable to this action.

## FACTS

On March 3, 1988, Barbara and Don Nonella and 7C Ranch, an Oregon corporation, filed a complaint in United States District Court for the District of Nevada under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. (1982) (FTCA). Plaintiffs alleged that the Navy acted negligently and wrongfully in conducting supersonic overflights of the 7C Ranch, and requested monetary relief for personal injury and property damage in excess of $10,000.[1] The Tucker Act, 28 U.S.C. § 1346(a)(2) (1982), prevented plaintiffs from asserting a Fifth Amendment takings claim in their district court suit, so on April 14, 1988 they filed such a claim in this court, seeking a money judgment. The district court and Claims Court actions overlapped; plaintiffs sought monetary compensation in each complaint for loss of the same ranch, cattle, and mobile home due to low-level supersonic overflights and use of weapons.

## DISCUSSION

Defendant filed a motion to dismiss the takings claim for lack of jurisdiction

---

1. It was also alleged that weapons systems on the aircraft were used to destroy a number of plaintiffs' cattle.

under 28 U.S.C. § 1500 (1982), based on the clear wording of the statute and the recent decision by the United States Court of Appeals for the Federal Circuit in *Johns–Manville v. United States*, 855 F.2d 1556 (Fed.Cir.1988). Plaintiffs countered that "[t]he *Johns–Mansville* [sic] case was wrongly decided by the Federal Circuit" and that the court should stay proceedings pending resolution of the district court case. Plaintiffs argued that section 1500 was inapplicable since they were statutorily prevented from presenting both their FTCA and Constitutional claims before a single forum.

At issue is whether plaintiffs' lack of election allows this court to take jurisdiction and grant plaintiffs' request for a stay. 28 U.S.C. § 1500 (1982), the center of this dispute, states that:

> The United States Claims Court shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Section 1500 precludes the Claims Court's exercise of jurisdiction over proceedings when claims based on the same facts were previously filed and remain pending in other courts. The section was enacted over a century ago to avoid the maintenance of suits against the United States in the Court of Claims after a claimant failed to receive satisfaction from suit against the United States elsewhere. At that time a judgment in another court had no res judicata effect in a subsequent suit against the United States in the Court of Claims. Schwartz, *Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents*, 55 Geo. L.J. 573, 573–77 (1967); *see Dwyer v. United States*, 7 Cl.Ct. 565, 567 (1985). The cases and legislative history indicate that section 1500 was created for the benefit of the sovereign and was intended to force an election when both forums could grant the same type of

relief, arising from the same operative facts. *Johns–Manville*, 855 F.2d at 1564. The current purpose served by the section is to relieve the United States from defending the same case in two courts at the same time. *Id.* at 1562; *Dwyer*, 7 Cl.Ct. at 567.

The initial question for the court to decide is whether plaintiffs claims before the district court and this court are the same for section 1500 purposes. The court is compelled to follow the course charted by the Federal Circuit in *Johns–Manville* to navigate this action. As to plaintiffs' argument that *Johns–Manville* was wrongly decided, the court answers that it is bound by Court of Appeals for the Federal Circuit decisions and is simply not at liberty to disregard such precedent. General Order No. 1, 1 Cl.Ct. XXI (1982). The first issue disposed of in *Johns–Manville* was nearly identical to that in this case; whether a prior-filed district court suit was the same claim as an action filed in this court by the same plaintiff where each complaint is based on identical operative facts but different theories of relief. Johns–Manville faced statutory difficulties similar to those of plaintiff. Johns–Manville could bring its tort claim only in district court under the FTCA, while the Tucker Act mandated that it bring its contract case to the Claims Court. Each complaint sought money damages. Johns–Manville, like plaintiff, argued that because statute prevented its bringing all theories of recovery to one forum, section 1500 did not apply. The Federal Circuit disagreed, finding that the Claims Court had no jurisdiction when claims arising from the same set of operative facts were pending before another court, even if those facts supported different legal theories that could not all be brought in one proceeding. *Johns–Manville*, 855 F.2d at 1567. Because Johns–Manville sought the same type of relief in its tort and contract claims and those claims arose from the same set of operative facts, the court found that the claims were identical for the purposes of section 1500 and dismissed the case.

The same "operative facts" test used in *Johns–Manville* to determine if two claims are the same is directly applicable to the present action. *Id.* at 1563. Plaintiffs did not aver that the underlying facts of the two claims were distinct: each complaint alleged that the Navy's low-level supersonic overflights of the ranch interfered with the breeding, behavior, weight, and conception rate of plaintiffs' cattle, and thus destroyed plaintiffs' home and business. At the district court, plaintiffs requested monetary compensation for the loss of their ranch, cattle and mobile home due to the Navy overflights. In this court, plaintiffs' takings claim requested monetary relief for the inverse condemnation of the same ranch, cattle, and mobile home. It is apparent that the takings claim, while not an exact copy of plaintiffs' district court complaint, is based on the same actions by the Navy, and the monetary remedy requested is clearly duplicative in that the property claims significantly overlap. Such a result is exactly what section 1500 seeks to avoid: duplicitous, potentially vexatious litigation. *Casman v. United States*, 135 Ct.Cl. 647, 649 (1956).

The court's analysis is unaffected by the fact that plaintiff sued in tort in one court and under the Constitution in another. Legal theories of recovery do not change the basic facts of the case. *British American Tobacco Co. v. United States*, 89 Ct.Cl. 438, 440 (1939), held that "the term 'claim' in section 1500 has no reference to the legal theory upon which a claimant seeks to enforce his demand." While different elements of proof are necessarily alleged to prove different theories, these are tangential to the determination of whether two claims are the same under the statute. As *Johns–Manville* states, "we construe the term 'claim' in 28 U.S.C. § 1500 to be defined by the operative facts alleged, not the legal theories raised ... elements of proof are only relevant once a legal theory has been chosen," and thus do not alter the basic facts of the case. *Johns–Manville*, 855 F.2d at 1563, 1564. The fact that plaintiffs alleged slightly different facts to prove different theories of recovery does not vitiate the conclusion that the same set of facts gave rise to both claims—the supersonic overflights of the ranch by the Navy. It is clear that plaintiffs' claims in the district court and Claims Court arose from the same set of operative facts, and despite necessary differences in theories of recovery or elements of proof alleged, are the same for the purpose of 28 U.S.C. § 1500 (1982). This court is therefore deprived of jurisdiction over plaintiffs' action.

Plaintiffs asked that the court disregard *Johns–Manville* and instead direct its attention to *Arizona Helicopters, Inc. v. United States*, 4 Cl.Ct. 662 (1984), requesting the court to grant a stay of proceedings. In *Arizona Helicopters*, the court allowed plaintiff a stay after he argued that although he was seeking money damages in each court, those sought in the district court were really equitable as opposed to the legal damages sought in Claims Court. Because the two requests for damages were different, the action arguably fell within the exception enumerated in *Casman v. United States*, 135 Ct.Cl. 647 (1956), giving the judge jurisdiction to grant a stay. In *Casman*, the Court of Claims held that jurisdiction was proper because plaintiff requested two substantively different forms of relief from the two forums: an injunction in one court, and a money judgment in the other. *Id.* at 650.

Plaintiffs' reliance on *Arizona Helicopters* and the *Casman* exception to section 1500 is misplaced. In *Arizona Helicopters*, plaintiff's somewhat strained argument gave the judge a benefit-of-the-doubt feeling because of the harshness of dismissal. *Id.* at 666. Plaintiffs here did not argue that their two complaints asked for different types of relief; indeed, plaintiffs' constitutional and tort claims each solicit the same money damages based on the same events. Plaintiffs read *Casman* too broadly, construing its exception as extending to every situation where a plaintiff cannot bring every possible theory of relief in one court. *Johns–Manville* expressly limited the *Casman* exception to its particular circumstances, namely, where the plaintiff seeks substantively different relief in each forum. *Johns–Manville*, 855 F.2d

at 1566. Absent this substantive difference, a lack of election does not remove duplicative claims from the purview of 28 U.S.C. § 1500. Since both complaints in this case request the same type of relief, money damages, the *Casman* exception cannot apply.

The court thus finds that plaintiffs' claims in the district court and Claims Court arose from the same set of operative facts and are identical for the purposes of 28 U.S.C. § 1500. The court therefore has no jurisdiction over the action. As to whether the court may grant plaintiff a stay in the absence of jurisdiction over the case, the answer is clearly negative. As *Johns–Manville* unequivocally states, "[a] court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." *Johns–Manville*, 855 F.2d at 1565. "It is not possible for this court to work within a jurisdictional vacuum." *Connecticut Youth Services v. United States*, 16 Cl.Ct. 102, 105 (1989). Absent jurisdiction, the court simply has no power to grant a stay and must dismiss the suit.

## CONCLUSION

Because plaintiffs' claims before the district court and Claims Court arose from the same set of operative facts and requested similar monetary relief, the court finds that they are the same claim for the purposes of 28 U.S.C. § 1500 (1982). The court is therefore deprived of jurisdiction over plaintiffs' suit, and must dismiss it without leave to refile. The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.