Stephen MARKS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–111C.

United States Claims Court.

Oct. 10, 1991.

States District Court for the Southern District of Florida based on the identical operative facts. The essence of the action there is specific performance whereas the case here, in theory, is bottomed on a breach claim. In the alternative, the defendant moves for summary judgment under RUSCC 56, asserting that a valid contract (expressed or implied) for the sale of the property at issue was never formed. Furthermore, even if a valid contract was created, the defendant further argues that Mr. Marks obtained the full remedy provided under the contract, as intended by the parties, when his full deposit funds were made available for receipt by him. For the reasons stated below, the defendant's RUSCC 12(b)(1) motion to dismiss is DENIED and the motion for summary judgment is GRANTED.

G. Lindsay Simmons, Washington, D.C., attorney of record, for plaintiff.

Mark Melnick, Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

This is a breach of contract action in which plaintiff, Stephen Marks, seeks $300,000 in damages plus interest from the defendant, the United States, acting through the United States Marshals Service (USMS). Mr. Marks alleges that the USMS breached an express written contract for the sale of certain real property by refusing to accept the tender and failing to convey title at closing. Jurisdiction is, therefore, premised on 28 U.S.C. § 1491.[1] The defendant, on the other hand, has filed a RUSCC 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. In this connection, the defendant avers that this court lacks jurisdiction under 28 U.S.C. § 1500[2] because the plaintiff has a *previously* filed action pending in the United

*Facts*

On April 21, 1989, the United States District Court for the Southern District of Florida, in an *in rem* forfeiture action, issued an interlocutory order directing sale of the property at 3940 Douglas Road, Coconut Grove, Florida 33133, by the USMS during criminal and civil proceedings against the previous property owner. A final judgment of forfeiture was, thereafter, entered on June 15, 1989, in an *in personam* criminal action (# 87–928C). In connection with a forthcoming sale, the USMS received an appraisal dated January 25, 1988, of $550,000 for the real estate from a licensed appraiser and thereafter listed it at a price of $605,000. Mr. Marks signed a written contract with the USMS for the sale of said real property for a price of $605,000 and paid a $60,500 deposit on July 14, 1989.

On September 1, 1989, the agreed closing date, the USMS, however, refused to accept Mr. Marks' tender of payment or to convey title. Instead, the government asserted that it had made a mistake in setting the sales price *below* fair market value in view

---

1. 28 U.S.C. § 1491(a)(1) (1988) provides in part: The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department or upon any express or implied contract with the United States....

2. The text of this statute is set out where appropriate *infra*.

of its second fair market value appraisal of the property which amounted to $860,000. A third appraisal was also made which valued the property at $790,000, or $185,000 in excess of Mr. Marks' contract price. In any event, the contract never received confirmation by the district court because the transaction was aborted and, consequently, the USMS directed the escrow broker to release Mr. Marks' deposit, which was made available to him.

On December 6, 1989, Mr. Marks filed a motion to compel compliance in the Florida district court forfeiture proceeding without first filing a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure. He thereafter filed a complaint, on February 5, 1990, in the Claims Court demanding $300,000 in damages plus interest for the government's breach of contract. In opposition, the defendant, on July 31, 1990, filed a corrected motion to dismiss the Claims Court action allegedly based on the court's lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1500.[3] As a result of Mr. Marks' failure to meet procedural requirements regarding his December 6, 1989 motion, the district court, on August 9, 1990, granted the defendant's motion to strike Mr. Marks' December 6, 1989 motion to compel compliance. Nevertheless, the district court did allow Mr. Marks 15 days leave to file a motion to intervene under Fed.R.Civ.P. 24. Accordingly, on August 24, 1990, Mr. Marks filed a Complaint In Intervention in the United States District Court for the Southern District of Florida seeking specific performance of the contract allegedly entered into by the government and himself. Currently, that action is still pending in the district court.

On February 11, 1991, the defendant filed a supplemental motion to dismiss or in the alternative for summary judgment asserting, once again, that this court lacks subject matter jurisdiction under RUSCC 12(b)(1), and, for the first time, that the plaintiff has failed to state a claim for which relief can be granted under RUSCC 12(b)(4). The motion of dismissal due to lack of subject matter jurisdiction is premised on 28 U.S.C. § 1500, wherein the defendant contends that the claim before this court is one and the same claim as that *previously* filed and currently pending in the U.S. district court in Florida, and therefore, the Claims Court is barred from exercising its jurisdictional power under § 1500. With regard to its motion for summary judgment, the defendant alternatively contends that no valid contract was formed simply because the USMS did not have actual authority to bind the United States Government contractually without first securing confirmation by the district court. In addition, it avers that even if a valid contract was formed, Mr. Marks constructively received the full and total relief specified by the contract at the time the USMS instructed the escrow broker to release his deposited funds to him, despite Mr. Marks' refusal to receive and accept the refunded deposit.

In response to the defendant's § 1500 jurisdictional arguments, Mr. Marks raises the issue—whether there is a "suit" pending on his behalf in the district court (*i.e.*, Mr. Marks contends that he did not *file* a "suit" in the district court and that he, therefore, is not the plaintiff in the district court). Accordingly, Mr. Marks alleges that he has no claim currently pending before that court; that secondly, even if he had an action pending before the district court, the *"Casman* exception" to the § 1500 jurisdictional bar applies in this instance because *Casman v. United States*, 135 Ct.Cl. 647 (1956), allows a party to simultaneously seek equitable relief in a district court and monetary relief in the Claims Court even when the two claims are based on the same operative facts. Finally, in response to defendant's motion for summary judgment, Mr. Marks asserts that he has a valid contract with the USMS for the latter *to convey title to the real* property, and that the damages to which he is entitled to recover should not be limited to the refund of his deposit.

**3.** *See* body of *Discussion* section herein, for operative language.

*Discussion*

We are faced with two issues. First, we must decide whether § 1500 divests this court of jurisdiction. For reasons delineated below, we find that it does not. Secondly, because this court has subject matter jurisdiction over this matter, we next decide the merits of the defendant's motion for summary judgment. To do this, we must establish: (i) whether a valid sales contract was formed between Mr. Marks and the United States, and if so, (ii) whether the USMS may limit its liability to the refund of the deposit as specified in the contract. Respectively, we find that the USMS lacked the authority to bind the United States in contract. Further, even if a valid contract was formed, the government properly limited its liability to the return of Mr. Marks' deposit. Therefore, we are constrained to conclude that the motion for summary judgment must be granted. We will examine each of these issues seriatim.

1. *The Motion to Dismiss*

 The defendant contends that the Claims Court lacks subject matter jurisdiction over this case because Mr. Marks' claim is based on the same operative facts as the claim pending in the district court. More importantly, argues defendant, the jurisdiction of the Claims Court, as granted by 28 U.S.C. § 1491, is limited by § 1500, which provides, in part:

The United States Claims Court shall not have jurisdiction of any *claim* for or in respect to which the plaintiff or his assignee has *pending* in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was in respect thereto, acting or professing to act, di-

rectly or indirectly under the authority of the United States.

28 U.S.C. § 1500 (1988) (emphasis added). The purpose of § 1500 was conclusively summarized in *Nonella v. United States*, wherein this court stated that:

*Section 1500 precludes the Claims Court's exercise of jurisdiction over proceedings when claims based on the same facts were previously filed and remain pending in other courts.* The section was enacted over a century ago to avoid the maintenance of suits against the United States in the Court of Claims after a claimant failed to receive satisfaction from suit against the United States elsewhere. The cases and legislative history indicate that section 1500 was created for the benefit of the sovereign and was intended to force an election when both forums could grant *the same type of relief,* arising from the same operative facts.... *The current purpose served by the section is to relieve the United States from defending the same case in two courts at the same time.*

16 Cl.Ct. 290, 292 (1989) (emphasis added) (citations omitted). In light of prior case law, however, we find that the general jurisdictional bar imposed by § 1500 has no application here, notwithstanding the foregoing, for two reasons. First, the Court of Claims in *Casman, supra,* declared that it, nevertheless, has the power to exercise jurisdiction over a monetary claim in excess of $10,000 when a prior purely equitable claim based on the same operative facts is pending in the district court. This pronouncement has become known as the *"Casman* exception" to § 1500. *See Casman v. United States,* 135 Ct.Cl. at 648. Secondly, when a suit is filed in the Claims Court *prior* to being filed in the district court, § 1500 does not operate to deprive the Claims Court of jurisdiction. *Tecon Engrs., Inc. v. United States,*[4] 170 Ct.Cl.

---

4. The law regarding § 1500 appears to be unsettled at this time. We note that a recent Court of Appeals for the Federal Circuit (CAFC) decision regarding the definition of a "pending" claim was vacated by that court. *UNR Indus., Inc. v. United States,* 911 F.2d 654 (Fed.Cir.), *vacated,* 926 F.2d 1109 (Fed.Cir.1990). A rehearing of *UNR* has been ordered to further address the following issues:

a) Whether the term "has pending" as is used in 28 U.S.C. § 1500 (1988) can be properly construed to mean pending at the time the Claims Court first entertains and acts on a Government motion to dismiss (or its equivalent), regardless of when the Claims Court suit was actually filed; or whether the term "has pending" is properly construed to mean

389, 394, 343 F.2d 943 (1965), *cert. denied,* 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966); *Fadem v. United States,* 13 Cl.Ct. 328, 335 (1987).

### a. Casman Exception

■ Applying the facts to our first point regarding this court's "lack of" jurisdiction, we hold that § 1500 does not bar the court from exercising its jurisdiction on the facts here because Mr. Marks is seeking different remedies in two distinct courts, *i.e.,* he is exclusively seeking equitable relief in the district court, and *only* monetary relief in this court. In *Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1563 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989), the CAFC declared that claims which are *simultaneously* before the district court and this court based on the same operative facts are not within the jurisdiction of the Claims Court. Because Mr. Marks asserts the same facts in both courts, namely, that he entered into a contract with the USMS to buy certain real property and that the USMS refused to perform, the defendant contends, and we agree, that the same operative facts are the basis of both suits. However, this court also observes that established precedent provides that although the operative facts may be the same, the § 1500 jurisdictional bar still does not necessarily apply in every case. This is so because the type of relief sought must also be considered in the jurisdictional equation. *See Nonella,* 16 Cl.Ct. at 293–294; *Casman,* 135 Ct.Cl. at 650.

Therefore, Mr. Marks vigorously asserts that the facts here fall squarely within the *Casman* exception to § 1500, and we

pending at the time when the Claims Court suit was filed;
 b) Whether the case of *Tecon,* 343 F.2d 943 [citation omitted] should be overruled; and
 \* \* \* \* \* \*
 d) Whether the rule announced in *Johns–Manville,* 855 F.2d 1556 [citation omitted] for determining what is a claim under § 1500 should be reconsidered, and if so, what should be the proper rule.
*UNR,* 926 F.2d at 1110. At this time, however, we observe that the holdings in *Tecon* and *Johns–Manville* still stand as obligatory precedent on this court.

agree. In defining the operation of this exception, the CAFC explained:

> An exception [to § 1500] exists under *Casman v. United States,* 135 Ct.Cl. 647 (1956), where a type of relief not available in the Claims Court is sought in the other court.

*Johns–Manville,* 855 F.2d at 1568. In addition, the logic behind this exception was cogently stated by this court in *Hill v. United States,* as follows:

> The policy reason underlying this position is the belief that a plaintiff should not be denied monetary damages here when he also chooses to pursue equitable relief elsewhere.

8 Cl.Ct. 382, 387 (1985). On the other hand, it is significant to observe that the *Casman* exception was expressly limited by the CAFC in *Johns–Manville* to include only those cases where the relief sought in the other court is outside the limited jurisdiction of the Claims Court. *Johns–Manville,* 855 F.2d at 1566. Even given appropriate deference to the foregoing limitation, we still find that the *Casman* exception applies in this instance.

Generally, it is well settled that the only form of relief available in the Claims Court is that of a monetary one, and an expansion of the Claims Court's jurisdiction to include equitable relief, such as that requested by Mr. Marks, has been repeatedly rejected. *E.g., United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1968). The district courts, on the other hand, have concurrent jurisdiction with the Claims Court over claims against the United States, but they are limited to amounts not to exceed $10,000. 28 U.S.C. § 1346 (1988).[5] Thus, it is clear beyond cavil, giv-

**5.** 28 U.S.C. § 1346 (1988) states in part:

> (a) The district courts shall have original jurisdiction concurrent with the United States Claims Court, of:
> ....
> (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States....

en the foregoing operative facts, that this case falls within the strict limits of the *Casman* exception. Not only is it undisputed that the district court has exclusive jurisdiction over Mr. Marks' claim for specific performance, especially since it is an equitable claim, but also the Claims Court has exclusive jurisdiction over the $300,000 damage claim simply because it exceeds $10,000.

Several cases follow *Casman* in holding that a monetary claim for a value which exceeds the amount limited by statute in the district court may proceed in the Claims Court while a claim for equitable relief is pending in the district court. *E.g., Boston Five Cents Savs. Bank v. United States,* 864 F.2d 137, 140 (Fed.Cir.1988). In *Boston Five,* the plaintiff originally sought declaratory judgment against the United States in the United States District Court for the District of Massachusetts. While a motion to dismiss the above action in the district court was pending, the bank then filed on the same day, in the district court and the Claims Court, a claim for monetary damages based on the same claim. The Claims Court dismissed the action for lack of jurisdiction pursuant to § 1500. The CAFC, however, reversed the Claims Court's dismissal stating that the Claims Court had exclusive jurisdiction over the bank's monetary claim and, therefore, should not have dismissed the action. *Id.* In addition, the court pointed out that "at the time the Claims Court action was filed, no money claim was pending in the district court within the purview of section 1500." *Id.*

The defendant here, nevertheless, contends that according to the facts and ruling in *Ireland v. United States,* 11 Cl.Ct. 543, 545 (1987), Mr. Marks should be precluded from recovering damages in the Claims Court, because if the district court grants him specific performance, Mr. Marks will have received all of the relief to which he would be entitled, namely, the property for which he contracted at the contract price. In *Ireland,* the plaintiff's claim in both the district court and the Claims Court challenged the validity of his removal from his position as a Foreign Service Staff Officer. Although the plaintiff only sought monetary relief in the Claims Court, the natural result of his reinstatement by the district court would include the automatic payment of back pay. The court noted that, as a result of his reinstatement, the plaintiff would be afforded essentially the same relief as that which he was seeking in the Claims Court. The court further went on to state that the district court action has the potential to give the plaintiff "all the monetary relief to which he would be entitled if his removal action is set aside." Based on this language, the defendant asserts that the Claims Court action should be dismissed for lack of jurisdiction because, in the instant case, the district court's grant of specific performance would, effectively in defendant's belief, grant Mr. Marks all the relief to which he is entitled, or in other words, Mr. Marks would receive essentially the same relief in both courts, *i.e.,* the benefit of the bargain.

We find the instant case, however, to be distinguishable from *Ireland* because, contrary to the defendant's belief, not only is the plaintiff not seeking what is essentially the same relief in both courts, but also if Mr. Marks receives specific performance in the district court, he will not gain any monetary relief therefrom. Moreover, this court need not concern itself with the potential of Mr. Marks receiving double damages for his claim. It may well be that at the time § 1500 was enacted over a century ago, a judgment in another court had no *res judicata* effect on a subsequent suit against the United States in the Court of Claims. *Nonella,* 16 Cl.Ct. at 292. But today, *res judicata* will undoubtedly protect the United States from Mr. Marks recovering twice on the same claim if either the district court or the Claims Court first orders relief for Mr. Marks. Therefore, because of the different substantive relief sought in each court, there is no need to invoke § 1500 to relieve the United States from defending the same case in two courts at the same time. *Id.*

b. Sequence of Filing in the Courts in Triggering § 1500

In addressing our second point regarding the sequence of filing of the

claims, we look to two cases with facts similar to the case at bar. The plaintiffs in *Tecon* filed suit in the Court of Claims, then filed identical claims thereafter in the district court. When they tried to dismiss their own suit in the Court of Claims on a RUSCC 12(b)(1) motion to dismiss due to lack of subject matter jurisdiction, the court held that no express provision was required in § 1500 to allow the court to retain jurisdiction if suit was properly filed here first. Accordingly, if a claim is properly filed in the Claims Court and thereafter in the district court, the Claims Court retains jurisdiction. In this context, *Tecon* states that:

> The long established rule of comity in such cases is that the court having equal and concurrent jurisdiction over the subject matter which first obtains and exercises this jurisdiction, retains jurisdiction until a final judgment is entered.

170 Ct.Cl. at 394, 343 F.2d at 946 (citations omitted). Further, *Tecon* shows that the legislative history supports this interpretation of § 1500:

> The clear meaning and legislative intent of this 1868 statute was to prevent this court from taking jurisdiction of a claim *only* when the same plaintiff already "shall have commenced and has pending" another suit on the same claim in another court. This same clear meaning and intent is still evident in Section 1500, despite minor changes in phraseology which do not effect any change in jurisdiction.

170 Ct.Cl. at 399, 343 F.2d at 949.

In a second similar case, the plaintiff filed an action originally in the Claims Court and then filed a subsequent action in the district court based on the same set of facts but alleging different claim theories. The plaintiff then amended and supplemented his original complaint in the Claims Court to include a claim identical to that of the district court. The court held that the additional claim in the amended complaint before the Claims Court did not divest the court of jurisdiction, but that it related back to the original filing of the suit. Consequently, the court reiterated the point

that once an action is properly filed in the Claims Court prior to a filing in the district court, the Claims Court may maintain jurisdiction over the action. *Fadem,* 13 Cl.Ct. at 335.

According to the indisputable facts in the case at bar, Mr. Marks intervened in the district court action on August 24, 1990, *after* he filed his complaint in this court on February 5, 1990; therefore, according to *Tecon* and *Fadem,* § 1500 does not apply in the instant case. *See Tecon,* 170 Ct.Cl. at 394, 343 F.2d at 946; *Fadem,* 13 Cl.Ct. at 335. The government, however, points out that Mr. Marks filed a motion to compel compliance in the district court on December 6, 1989, prior to its filing in the Claims Court. Although true, the facts nevertheless indicate that this motion was stricken by the district court because Mr. Marks filed as an interloper without becoming a party to the suit. Thus, it was not until August 24, 1990, when Mr. Marks was permitted to intervene that he was made a proper party to the suit, and therefore, first established his claim against the government in the district court. Since there was no claim pending in another court when Mr. Marks filed his complaint in the Claims Court, jurisdiction is not barred by § 1500.

In summary, there are two reasons for this court's finding that the defendant's motion to dismiss for lack of subject matter jurisdiction is denied. First, the *"Casman* exception" to the § 1500 jurisdictional bar applies because Mr. Marks only seeks monetary relief in this court, and equitable relief in the district court; and secondly, because Mr. Marks filed suit in the Claims Court *prior* to filing in the district court.

## 2. *The Motion for Summary Judgment*

Alternatively, the defendant contends that summary judgment should be granted inasmuch as the perceived real estate contract entered into with Mr. Marks was invalid, in that the USMS lacked the requisite authority to bind the government without obtaining a court confirmation of the judicial sale. Moreover, even if the contract was valid, says defendant, Mr. Marks has

already received the full relief to which he is entitled under the contract with the constructive "return" of his deposit.[6]

Pursuant to RUSCC 56, a grant of summary judgment[7] is proper—

if the pleadings ... together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant, the defendant herein, initially has the burden of showing that there are no genuine issues of material fact. While evidence is not required, the moving party must, nevertheless, establish how the pleadings or other existing documents led the court to conclude that there are no genuine issues of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. On the other hand, the non-movant, Mr. Marks, must respond by producing affirmative evidence that a genuine issue of material fact does exist, particularly where the movant has supported its motion with affidavits or other evidence, which if unopposed would entitle him to summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once both parties have sufficiently set forth their positions, the court must then ask—whether reasonable jurors could find by a preponderance of the evidence that the movant has met his burden and is entitled to a judgment as a matter of law. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. If so, the court may grant the motion for summary judgment.

■ Given these well-established principles, we are compelled to conclude, on the indisputable material facts here, that summary judgment is appropriate on the defendant's motion. This is clearly true since the agreement between the USMS and Mr. Marks did not form a valid contract. In this connection, the elements which must be present to form a valid contract are: (1) mutuality of intent, (2) offer (consideration) and acceptance, and (3) authority to contract. *Prudential Ins. Co. of Am. v. United States,* 801 F.2d 1295, 1297 (Fed.Cir. 1986). In the instant case, the third element, authority to contract, is missing from the agreement. That is, we find that the USMS lacked the requisite binding authority to obligate the United States Government, because in a judicial sale,[8] the district court is *required* to confirm the sales agreement before the government can be bound by its terms. This confirmation requirement is an established common law procedure. *Pewabic Mining Co. v. Mason,* 145 U.S. 349, 362, 12 S.Ct. 887, 890, 36 L.Ed. 732 (1891); *Craft v. Kendrick,* 39 Fla. 90, 21 So. 803 (1897); 47 Am.Jur.2d, *Judicial Sales* § 1 (1969).

To determine how the confirmation requirement is procedurally satisfied, we look to state law as the governing body, in this case Florida law.[9] Florida's Judicial Sales Procedure, reads:

Confirmation.—When the certificate of title is filed the sale shall stand confirmed, and title to the property shall pass to the purchaser named in the certificate without the necessity of any further proceedings or instruments.

6. According to the record facts, the USMS directed the escrow broker to release Mr. Marks' deposit funds from escrow. Mr. Marks, however, has refused to receive his deposit.

7. The defendant's RUSCC 12(b)(4) motion to dismiss for failure to state a claim for which relief can be granted has been incorporated into the RUSCC 56(c) motion for summary judgment because the issues set forth in the 12(b)(4) motion make references to facts outside the pleadings, and the arguments on the motion go to the merits of the case.

8. "A judicial sale is generally defined as a sale made under a judgment or order of a court of competent jurisdiction by an officer legally appointed and commissioned to sell, who acts as a mere ministerial agent of the court which appoints him, such sale being subject to confirmation by the court, and becoming absolute only when so confirmed." 47 Am.Jur.2d, *Judicial Sales* § 1 (1969).

9. State law governs because proprietary interests in land are local in nature, and unless a contravening federal statute or policy exists, the law of the state should be applied. *United States v. Smith,* 479 F.Supp. 804, 806 (N.D.Ga. 1979) (*citing Mason v. United States,* 260 U.S. 545, 43 S.Ct. 200, 67 L.Ed. 396 (1923)).

Fla.Stat.Ann. § 45.031(5) (West 1991). As the record shows, a certificate of title was never conveyed to the plaintiff, nor was there any evidence of one ever having been filed. Thus, this sale was not confirmed as required by Florida state law and, as a result, the USMS did not, as a matter of law, have proper authority to bind the government to a contract without a district court confirmation. Accordingly, we find that a valid contract was never formed for the sale of the real estate in question.

Mr. Marks has, therefore, failed to convince the court that he entered directly into a contract between the United States and himself, and not with the U.S. Marshals Service as an agent of the district court. This is particularly true inasmuch as the indisputable facts show that the order of the United States District Court directing the interlocutory sale issued on April 21, 1989. Whereas, in compliance therewith, the USMS executed the standard sales contract form with plaintiff thereafter in July 1989. While it may be true that the papers he signed indicated the contract would be binding, this does not allay the fact that the agent of the government with whom he made the agreement did not alone have the authority to obligate the government. Against this background, Mr. Marks grossly misconstrues the application of *Levy v. United States,* when he cites the following:

> [t]he United States was not merely a disinterested newcomer with respect to the property. Rather, the government's interest in it attached at the time of the criminal conviction of the former owner ... but it had vested even before that time, when the unlawful acts on which the conviction was based occurred.

10 Cl.Ct. 602, 608 (1986). In fact, in *Levy,* the General Services Administration (GSA) was the seller of the real property not the USMS [10]. The *Levy* court expressly distinguished the GSA sale from a judicial sale when it determined that the plaintiffs had a

contract with the United States. The court is quoted as saying—

> The hallmark of a judicial sale is that it is ordered by a court and carried out by someone appointed by the court, generally a United States Marshal. [citations omitted] ... *Under those circumstances, only the court itself is involved in the sale.* By contrast, in the case at bar, GSA was directly and deeply involved in the transaction.... In the court's view, these factors set the instant case apart from the usual judicial sale.

*Levy,* 10 Cl.Ct. at 609 (emphasis added). Thus, we think Mr. Marks' reliance on *Levy* to prove that he had a valid contract was misplaced, since the language in *Levy* only helped to convince this court that the sale at bar which took place was, in fact, a judicial sale and, therefore, under the complete control of the district court. The USMS acted solely as the district court's agent in carrying out its obligations and duties as prescribed by 28 U.S.C. § 556(a). As a result, it is quite clear to this court that Mr. Marks has failed to show that there are any genuine issues of material fact with respect to the validity of the contract. Accordingly, we grant defendant's *motion for summary judgment* in light of the fact that a valid contract was never formed because the contracting agent for the government lacked the necessary authority to bind the government.

▪ In the event that we had found on these facts a valid contract, we still would have granted summary judgment for the defendant because, under the provisions of the purported contract, Mr. Marks is only entitled to the return of his deposit if the government defaults thereon. Although Mr. Marks does assert that he has not actually received a refund of his deposit, the undisputed facts show that Mr. Marks has constructive receipt inasmuch as it was made available to him and he could have collected his money at anytime after the escrow broker received the December 1,

---

**10.** The GSA is not an agent of the district court as is the USMS. For example, the primary duty of the United States Marshals Service is to:

> provide for the security and to obey, *execute, and enforce all orders of the United States District Courts,* the United States Courts of Appeals, and the Court of International Trade. 28 U.S.C.A. § 566(a) (West 1991) (emphasis added).

1989 release letter from the USMS. Thus, it is Mr. Marks' own inaction which has forestalled his receiving the deposit and not that of the USMS.

With regard to Mr. Marks' contention that he is entitled to full compensatory damages, including those for loss of bargain, we disagree. That is, we find Mr. Marks' attempt to support his contention to be unpersuasive, particularly in light of the fact that he relies upon state law when noting that various courts have deemed provisions which limit the seller's liability upon default to the return of the purchaser's deposit to be unenforceable. In addition, it is a generally recognized principle that parties to a contract are free to limit remedies in accordance with their desire to allocate risks at the time the contract is executed, so long as those limitations are fair and reasonable. *Wise v. United States*, 249 U.S. 361, 365, 39 S.Ct. 303, 304, 63 L.Ed. 647 (1919); *High Plains Natural Gas Co. v. Warren Petroleum Company, A Division of Gulf Corp.*, 875 F.2d 284, 287 (10th Cir.1989). In the instant case, the parties modified the standard form contract, changing the buyer's damages portion of the default clause from—

"If for any reason other than failure of Seller to render his title marketable after diligent effort Seller default or refuses to perform this contract, Buyer may receive the return of his deposit or may proceed in law or in equity to enforce his legal right under this contract"

to read—

"If for any reason ... Seller defaults or refuses to perform this contract, Buyer may receive the return of his deposit...."

This agreed upon modification was accomplished by lining out the deleted words. We find the parties' affirmative and conspicuous modification of the contract to be a clear indication that they intended to limit the amount of damages recoverable upon the seller's default on the contract. *Government Systems Advisors, Inc. v. United States*, 21 Cl.Ct. 400, 413 (1990). Moreover, in light of the facts of this case, we find the modified default provision to be fair and reasonable.

Accordingly, the only issue left for this court, assuming that we had found that a valid contract existed, is whether the defendants's breach of the contract was a result of bad faith or, as asserted by the USMS, a good faith mistake as to the correct appraisal value of the real property. Mr. Marks cites this court in challenging the defendant's mistake defense:

General provisions seeking to immunize the Government from paying damages due to its own breach ... should be construed ... as not covering serious breaches, especially willful defaults....

*Freedman v. United States*, 162 Ct.Cl. 390, 392, 320 F.2d 359, 366 (1963). Although the language in *Freedman* is persuasive upon this court, it is not probative in this instance, particularly where Mr. Marks has failed to offer any proof that the government acted willfully in denying Mr. Marks the opportunity to purchase the property at the stated price. In fact, the facts indicate that the USMS received all its appraisals from agents licensed by the state and, therefore, had good reason to rely on those values when setting the sales price for the property in question. Beyond the fact that it is unclear why the appraisal values are disparate, we find that there is no evidence of bad faith on the part of the USMS in its attempt to attain the proper sales price for the property in question, nor in its refusal to sell at an undervalued price. In addition, we find that the Court of Claims' holding in *Freedman*, namely—that the limitation of the government's liability for damages to refunding the amounts paid by the plaintiff is proper and is applicable where "... a serious mistake has been made, such as a grave discrepancy between the true value of the item and the amount of the bid." *Freedman*, 162 Ct.Cl. at 396, 402–403, 320 F.2d at 362, 366. Not only is it quite obvious that the $605,000 sales price was grievously discrepant from the second appraisal of $860,000, but it was similarly discrepant as well from the third appraisal of $790,000. Thus, as in *Freedman*, the government was justified in refusing to sell the property at a significantly

undervalued price, particularly where there was no bad faith on the part of the government.

In summary, we find that the defendant's motion for summary judgment is granted because (i) there was no valid contract for the sale of real property between the government and Mr. Marks, and (ii) the damages due from the defendant's failure to convey the property were properly limited to the refund of the prepaid deposit.

*Conclusion*

For the reasons stated above, the defendant's RUSCC 12(b)(1) motion to dismiss due to lack of subject matter jurisdiction is DENIED. The defendant's RUSCC 56 motion for summary judgment is GRANTED. The Clerk shall enter judgment accordingly. No costs.

IT IS SO ORDERED.